UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AUSSIEKER and KIMBERLY AUSSIEKER,<br><br>Plaintiffs,<br><br>v.<br><br>STACCATO PROPERTIES, LLC, et al.,<br><br>Defendants. | No. 2:19-cv-0089 TLN DB PS<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs Mark Aussieker and Kimberly Aussieker are proceeding in this action pro se. This matter was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the court is plaintiffs' motion for default judgement against defendant Staccato Properties, LLC, ("Staccato Properties").[1] (ECF No. 8.) This motion came on for hearing before the undersigned on May 17, 2019. (ECF No. 16.) Plaintiff Mark Aussieker appeared in person on his own behalf. No appearance was made by, or on behalf of plaintiff Kimberly Aussieker or the defendant.

Having considered all written materials submitted with respect to the motion, and after hearing oral argument, the undersigned recommends that plaintiffs' motion be granted.

---

[1] On May 22, 2019, plaintiffs dismissed the only other named defendants, defendants Virgil Mateo and Christopher Espineda. (ECF No. 17.)

1

**BACKGROUND**

Plaintiffs, proceeding pro se, commenced this action on January 14, 2019, by filing a complaint and paying the required filing fee. (ECF No. 1.) Therein, plaintiffs allege that defendant Staccato Properties, a California Limited Liability Corporation, placed direct-to-voicemail calls to plaintiffs on three occasions using an automatic dialer in violation of the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. § 227, *et. seq*. (Compl. (ECF No. 1) at 2, 5.[2])

On February 14, 2019, plaintiffs filed proof of service on defendant Staccato Properties. (ECF No. 7.) That same day, plaintiffs requested entry of Staccato Properties' default. (ECF No. 8.) The Clerk of the Court entered Staccato Properties' default on February 15, 2019. (ECF No. 9.)

On March 18, 2019, plaintiffs filed the pending motion for default judgment. (ECF No. 15.) Plaintiffs' motion seeks damages and prejudgment interest. (Id. at 8.) On May 17, 2019, a hearing was held before the undersigned on the motion for default judgement. (ECF No. 16.) Despite being served with notice of the motion and hearing, defendant did not appear at the hearing and did not file an opposition to the motion for default judgement. (ECF No. 15 at 11.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

**A.    Appropriateness of the Entry of Default Judgment under the Eitel Factors**

Plaintiffs' motion for default judgement seeks judgement on the complaint's claims that the defendant violated the TCPA. (Pl.'s MDJ (ECF No. 15) at 6.) The factual allegations of plaintiffs' complaint are taken as true pursuant to the entry of default against the defendant.

**1.    Factor One: Possibility of Prejudice to Plaintiffs**

The first Eitel factor considers whether plaintiffs would suffer prejudice if default judgment is not entered. When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered. Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1007 (C.D. Cal. 2014) (granting a default judgement for a disabled plaintiff suing under the ADA and Unruh Act, relying upon this rationale).

Here, the defendant has failed to appear and defend against plaintiffs' claims. Absent entry of default judgement, plaintiffs would likely be without recourse against the defendant. Because plaintiffs will suffer prejudice if they are without recourse, this factor weighs in favor of entry of default judgment.

**2. Factors Two and Three: The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint**

The second and third factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. Thus, the second and third Eitel factors require plaintiff to state a claim on which plaintiff can recover. PepsiCo, Inc. v. California Security Cans, 238 F.Supp.2d, 1172, 1175 (2002); see Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Given the close relationship between the two inquiries, factors two and three are considered together.

As mentioned above, plaintiffs seek default judgment on claims that the defendant violated the TCPA. "The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent." Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1043 (9th Cir. 2017) (citation and quotation omitted). Specifically, 47 U.S.C. § 227(b) of the TCPA make is "unlawful 'to make any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service.'" Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1071 (9th Cir. 2019) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). And 47 U.S.C. § 227(c) of the TCPA is violated when a call is placed to a "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(2)(c). "This regulation also applies to wireless telephone subscribers who have registered their numbers on the national do-not-call registry." Heidorn v. BDD Marketing & Management Company, LLC, Case No. C-13-0229 JCS, 2013 WL 6571629, at *10 (N.D. Cal. Aug. 19, 2013) (citing 47 C.F.R. § 64.1200(e)). "[D]irect-to-voicemail messages are a 'call' under the TCPA[.]" Saunders v. Dyck O'Neal, Inc., 319 F.Supp.3d 907, 912 (W.D. Mich. 2018).

Here, the complaint alleges that plaintiff Mark Aussieker's cellular number was added to the "do-not-call registry in February of 2003." (Compl. (ECF No. 1) at 4.) And plaintiff Kimberly Aussieker's cellular number was added to the do-not-call registry "in 2005[.]" (Id.) On

January 11, 2019, defendant "caused two calls to be made" to "force[] a message on to" plaintiff Kimberly Aussieker's voice mail. (Id.)

On January 12, 2019, defendant "caused two calls to be made" to plaintiff Mark Aussieker's phone resulting in "a message on" plaintiff's "voice mail[.]" (Id. at 5.) The calls were made simultaneously using an "automatic telephone dialing system," "for the purpose of delivering the pre recorded voice message" to plaintiff. (Id.) The caller on the voice mail message purported to have "just driven by" plaintiffs' property. (Id. at 6.) Plaintiffs do not own property in Sacramento. (Id.) Plaintiff Kimberly Aussieker received the same voice mail minutes earlier "without missing a call." (Id.) Defendant did not have plaintiffs' prior consent for these calls. (Id. at 5, 11.)

The undersigned finds that the complaint has stated claims for violation of the TCPA. See Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) ("Thus, the three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."); Drew v. Lexington Consumer Advocacy, Case No. 16-cv-0200 LB, 2016 WL 9185292, at *7 (N.D. Cal. Aug. 11, 2016) ("Mr. Drew thus states a claim for violation of § 64.1200(c)(2) because Lexington messaged him while his phone number was on the do-not-call registry."). The second and third Eitel factors thus weigh in favor of the entry of default judgment.

**3.    Factor Four: The Sum of Money at Stake in the Action**

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Eitel, 782 F.2d at 1471-72; see also Philip Morris USA, Inc v. Castworld Prods., Inc., 219 F.R.D. 494, 500. (C.D. Cal. 2003). Plaintiffs' motion for default judgment inconsistently states that it "seeks $15,000 in statutory damages" but requests "judgment in the amount of $9,000," plus $500 in costs.[3] (Pls.' MDJ (ECF No. 15) at 7-8.) Even assuming $15,000 is at stake, the undersigned does not find the overall sum of money at stake to be so large or excessive as to militate against the entry of default

---

[3] Because the undersigned finds that plaintiffs should be awarded less than $9,000 in damages and costs, plaintiffs need not resolve this discrepancy.

judgment. See Freligh v. Roc Asset Solutions, LLC, Case No. 16-cv-0653 MEJ, 2016 WL 3748723, at *6 (N.D. Cal. June 8, 2016) ("Because this amount is neither substantial nor unreasonable and the statutory damages are tied to Defendant's misconduct, the fourth factor weighs in favor of default judgment.").

    **4.    Factor Five: The Possibility of a Dispute Concerning Material Facts**

This Eitel factor considers the possibility that material facts are disputed. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, there appears to be no material facts in dispute. This factor weighs in favor of default judgment.

    **5.    Factor Six: Whether the Default Was Due to Excusable Neglect**

This Eitel factor considers the possibility that the defendant's default was the result of excusable neglect. Despite having been properly served with plaintiffs' complaint and the instant motion for default judgment, defendant Staccato Properties has been non-responsive in this action. (ECF Nos. 7 and 13 at 11.) Thus, the record suggests that the defendant has chosen not to defend this action, and that the default did not result from excusable neglect. Accordingly, this Eitel factor weighs in favor of the entry of default judgment.

    **6.    Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits**

The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Eitel, 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. 2010). As the defendant has failed to respond in this matter, a decision on the merits is impossible. Therefore, the seventh Eitel factor does not preclude the entry of default judgment.

////

### 7. Summary of Eitel Factors

In sum, upon consideration of all the Eitel factors, the undersigned finds that plaintiffs should be granted default judgment against defendant and recommends that such a default judgment be entered. The undersigned therefore turns to plaintiffs' requested terms of judgment.

### B. Terms of the Judgment to be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. See Landstar Ranger, Inc. v. Path Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010.). Plaintiffs' motion seeks damages, costs, and prejudgment interest. (Pls.' MDJ (ECF No. 13) at 7.)

### 1. Damages

As noted above, it is unclear from plaintiffs' motion for default judgment whether plaintiffs are seeking $15,000 or $9,000 in damages plus $500 in costs. Compare Pls.' MDJ (ECF No. 13) at 7; with Pls.' MDJ (ECF No. 13) at 8. Plaintiffs who establish a violation of the TCPA "may recover the greater of their actual monetary loss or $500 per violation and treble damages where a violation is willful or knowing." Gallion v. Charter Communications Inc., 287 F.Supp.3d 920, 923 (C.D. Cal. 2018) (citing 47 U.S.C. § 227(b)(3)). And a plaintiff "may recover statutory damages for the § 227(b) and § 227(c) violations even though these violations arise from the same telephone contact." Drew v. Lexington Consumer Advocacy, Case No. 16-cv-0200 LB, 2016 WL 9185292, at *10 (N.D. Cal. Aug. 11, 2016).

Here, plaintiffs' motion for default judgment asserts that it seeks "(nine) statutory penalties of $1,500" but does not explain what conduct constituted the nine statutory violations. (Pls.' MDJ (ECF No. 13) at 7.) And plaintiffs' complaint asserts thirteen causes of action—eleven violations of the TCPA, one claim for malice, and one claim for ratification. (Pls.' Compl. (ECF No. 1) at 7-13.)

It may be that some of this confusion stems from the complaint's assertion of separate counts based on defendant's use of an automated dialer and prerecorded message. (Id. at 8-9.) The use of an automated dialer and the use of a prerecorded message, however, are each a violation of § 227(b). As noted above, plaintiffs may recover separate statutory damages for

7

violations of § 227(b) and § 227(c) arising out of single call, but not for multiple violations of § 227(b) arising out of a single call. See Drew, 2016 WL 9185292, at *10 ("because each of these violations are based on the same messages, Mr. Drew may only recover for six § 227(c) violations").

According to the allegations found in the complaint recounted above, on January 11, 2019, defendant placed two calls to plaintiff Kimberly Aussieker's phone for which plaintiffs can recover damages for two violations of § 227(b) and two violations of § 227(c). On January 12, 2019, defendant placed two calls to plaintiff Mark Aussieker for which plaintiffs can recover damages for two violations of § 227(b) and two violations of §227(c). That same day, defendant placed one call to plaintiff Kimberly Aussieker resulting in an additional violation of § 227(b) and an additional violation of § 227(c). Thus, the undersigned finds that plaintiffs may recover for a total of ten violations of the TCPA: five violations of § 227(b) and five violations of § 227(c).

As noted above, the court can award plaintiffs $500 for each violation, or up to three times that amount for a violation that is knowing or willful. Although the complaint alleges that the defendant's conduct was knowing and/or willful, plaintiffs have presented nothing from which the undersigned could make such a finding. In this regard, the allegations of the complaint establish that the violations consisted of only three discrete events, as opposed to repeated calls.

Plaintiffs have not alleged that the defendant was previously sued for similar conduct. That plaintiffs requested defendant cease making such calls and defendant refused. Or that the defendant's resources are such that the minimum statutory penalty would fail to deter future conduct. See Ellis v. Energy Enterprise USA, Inc., Case No. 17-cv-0497 VKD, 2018 WL 6816112, at *6 (N.D. Cal. Nov. 11, 2018) ("there is no evidence that Energy Enterprise has previously been sued for violating the TCPA, that it continues to violate the TCPA"). Compare Ebert v. National Brokers of America, Inc., No. 2:17-cv-1983 KJM EFB, 2018 WL 2440679, at *3 (E.D. Cal. May 31, 2018) (finding calls were willful when "placed after repeated requests that they stop").

Accordingly, the undersigned recommends that plaintiffs be awarded $500 for each of the ten violations, for a total award of $5,000.

**2. Costs**

Plaintiffs are also entitled to costs pursuant to 28 U.S.C. § 1920. Plaintiffs' motion asks for "$400 for the filing fee, and $100 for the cost of service on Defendants." (Pls.' MDJ (ECF No. 15) at 8.) However, plaintiff Mark Aussieker's declaration in support asserts that plaintiffs spent only $55 to have the defendant served. (Mark Aussieker Decl. (ECF No. 15) at 10.) Accordingly, the undersigned will recommend that plaintiffs be awarded costs in the amount of $455 for filing and service of process.

**3. Prejudgment Interest**

Plaintiffs seek "interest from the date this action was filed at the legal rate" and cite to 28 U.S.C. § 1961. (Pls.' MDJ (ECF No. 13) at 7.) The complaint, however, did not seek prejudgment interest. (Compl. (ECF No. 1) at 14.) "Because plaintiff did not pray for such damages in the complaint, and no meaningful notice of the possibility that such amounts would be awarded has been given, plaintiff cannot recover prejudgment interest." Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F.Supp.2d 916, 923 (C.D. Cal. 2010). Moreover, 28 U.S.C. § 1961 concerns postjudgment interest. "[P]ostjudgment interest on a district court judgment is mandatory." Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir. 1995).

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' March 18, 2019 motion for default judgment (ECF No. 15) be granted;

2. Judgment be entered against defendant Staccato Properties, LLC;

3. Defendant Staccato Properties be ordered to pay plaintiffs $5,455 in damages and costs;

4. Plaintiffs be awarded postjudgment interest; and

5. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections

with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 26, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\aussieker0089.mdj.f&rs